# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| PSK, L.L.C. d/b/a OVERHEAD DOOR COMPANY OF CEDAR RAPIDS AND IOWA CITY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RANDY HICKLIN d/b/a A-1 AMERICAN GARAGE DOOR REPAIR, ADVANCED GARAGE DOOR REPAIR, and/or OVER HEAD AAA GARAGE DOOR REPAIR; and DANETTA HICKLIN, d/b/a A-1 AMERICAN GARAGE DOOR REPAIR, ADVANCED GARAGE DOOR REPAIR, OVER HEAD AAA GARAGE DOOR REPAIR, AFFORDABLE OVERHEAD GARAGE DOOR REPAIR and AMERICAN CERTIFIED DOOR CO.,<br><br>　　　　Defendants. | No. C09-0105<br><br>ORDER REGARDING MOTION TO QUASH |

_____

## TABLE OF CONTENTS

I.　　INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　2

II.　　RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　2

III.　ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　3

IV.　　DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　4
　　　A.　　Emails in April and May 2007. . . . . . . . . . . . . . . . . . . . . .　6
　　　B.　　Emails in August and September 2008. . . . . . . . . . . . . . . . .　9
　　　C.　　Emails Between Mr. Squires and Mr. Slaughter. . . . . . . . . . .　10
　　　D.　　Emails Between Mr. Squires and Mr. Fauchier. . . . . . . . . . . .　12
　　　E.　　Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　12

V.　　ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　13

ADDENDUM A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　14

## I. INTRODUCTION

On the 16th day of June 2010, this matter came on for hearing on the Motion to Quash or Modify Subpoena and/or Motion for Protective Order (docket number 33) filed by the Plaintiff on May 14, 2010. The Plaintiff was represented by its attorney, Vernon P. Squires. The Defendants were represented by their attorney, Patrick J. McNulty.

## II. RELEVANT FACTS

Plaintiff PSK, L.L.C., d/b/a Overhead Door Company of Cedar Rapids and Iowa City ("PSK"), has been providing garage door installation and repair services since 1956. It is the exclusive distributor for Overhead Door Corporation ("OHD") in Benton, Cedar, Iowa, Johnson, Linn, and Jones counties.[1] In approximately the spring of 2007, PSK "became concerned" regarding certain advertisements in local telephone directories, which it claims caused confusion in the marketplace. According to the affidavit of Martin Fauchier, general manager of PSK, "PSK believed the advertising was an intentional attempt to exploit our name and reputation."

Mr. Fauchier decided to contact OHD "to ask for assistance." According to Fauchier's affidavit, PSK "routinely turn[s] to Overhead Door Corp. for advice." Mr. Fauchier contacted Christine Johnson, a lawyer in OHD's legal department, "to ask what rights and/or remedies Overhead Door Company of Cedar Rapids and Iowa City might have against the businesses that we believe were infringing our rights." According to Mr. Fauchier, Ms. Johnson responded in an email with "her impressions, legal advice and recommendation."

PSK subsequently engaged the services of the law firm of Bradley & Riley "to review our rights and pursue a lawsuit." Daniel Slaughter, another in-house lawyer for OHD, "asked that he be allowed to review and edit the proposed Complaint, and also asked to review any subsequent Court documents before they were filed." A number of

---

[1] A copy of the Distributor Agreement was attached to Defendants' Resistance as Exhibit A (docket number 34-1).

emails were then exchanged between Mr. Fauchier and lawyers for OHD. Other emails were exchanged between counsel at Bradley & Riley and in-house lawyers for OHD.

On or about April 27, 2010, Defendants Randy Hicklin and Danetta Hicklin ("the Hicklins") caused a subpoena to produce documents to be served on OHD.[2] The subpoena asks that OHD provide "all documents" in four areas: (1) those pertaining to the Overhead Door Company of Cedar Rapids and Iowa City (PSK), (2) communications with distributors concerning OHD's use of the terms "overhead door" or "overhead," (3) communications with competitors regarding the use of the terms "overhead door" or "overhead," and (4) communications with the United States Patent and Trademark Office concerning OHD's trademark, trade name, or mark applications.

On April 30, 2010, PSK served the Hicklins with a privilege log, identifying emails which would otherwise be discoverable by the Hicklins, but which PSK claims are protected by the attorney-client and/or work product privilege.[3] On May 11, 2010, counsel for OHD wrote to PSK's attorney and advised him that "Overhead Door Corporation disagrees with your designation of these materials as attorney-client privilege and/or work product." The letter stated OHD's intent to produce the emails, unless PSK pursued a court order to quash the subpoena. The instant motion to quash or for protective order soon followed.

### III. ISSUE PRESENTED

The subpoena served by the Hicklins on OHD consists of four parts. The parties agreed at the hearing that only the first numbered paragraph is relevant to the instant

---

[2] A copy of the Subpoena is attached to PSK's Motion as Exhibit 1 (docket number 33-3).

[3] A copy of the Plaintiff's Privilege Log was attached to PSK's Motion as Exhibit 3 (docket number 33-3). An Amended Privilege Log was served on May 28, 2010, and was attached to PSK's Reply as Exhibit 5 (docket number 35-1). The Amended Privilege Log lists the same documents, but also identifies those persons to whom the emails were copied.

motion.[4] The amended privilege log contains 16 entries, but the Hicklins concede that the last 6 entries (identified as P-33 – P-54), consisting of emails between Mr. Fauchier and Mr. Squires, are privileged communications. That is, the issue before the Court is whether the first ten entries on the amended privilege log are discoverable, or are otherwise protected by the attorney-client and/or work product privilege.

## IV. DISCUSSION

PSK argues that emails exchanged between Mr. Fauchier and attorneys for OHD are protected by the attorney-client privilege. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Company v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* It is apparently undisputed that Christine Johnson and Daniel Slaughter are attorneys-at-law. The fighting issue, however, is whether Mr. Fauchier's communications with OHD's counsel established an attorney-client relationship.

Accordingly, the Court must determine whether an attorney-client relationship existed between OHD's in-house counsel and PSK. At the outset, the Court notes that this is *not* a case where a corporation's employee contacts the corporation's in-house counsel seeking legal advice. *See, e.g., Upjohn v. United States*, 449 U.S. 383 (1981). Nor is there any question that Mr. Fauchier was acting as a representative of PSK. *See In re Bieter Company*, 16 F.3d 929 (8th Cir. 1994). Rather, the issue is whether Mr. Fauchier, an employee of PSK, sought and received legal advice from Ms. Johnson and Mr. Slaughter, in-house counsel for OHD, thereby establishing an attorney-client relationship.

---

[4] At the time of hearing, the Hicklins' attorney advised the Court that he had agreed with OHD's counsel to voluntarily "forebear" production at this time of the documents falling within the last three paragraphs of the subpoena.

This case differs from the ordinary case, in the sense that the person ostensibly seeking legal advice did not contact a privately practicing attorney, but instead contacted in-house counsel with whom the person was familiar. The parties have not directed the Court to any cases directly on point, and the Court has found none. That is, the parties have not cited any case where an "outsider" established an attorney-client relationship with in-house counsel of an unrelated corporation; but neither have the parties found a case which holds that such a relationship cannot be established.

It seems apparent that there was no pre-existing attorney-client relationship between PSK and Ms. Johnson or Mr. Slaughter. While PSK is an authorized distributor for OHD's products, they are distinct companies. The distributor agreement establishes certain rights and responsibilities of the parties, but it clearly does not establish an attorney-client relationship between PSK and OHD's in-house counsel. Accordingly, the Court must determine whether Mr. Fauchier's emails to Ms. Johnson and Mr. Slaughter, and the responses received from counsel, established an attorney-client relationship.

In *Diversified Industries, Inc. v. Meredith* 572 F.2d 596 (8th Cir. 1978), the Court set out "the conditions under which the attorney-client privilege is applicable":

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 601-02 (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)).

The Court in *Diversified Industries* also offered the following "shorter definition of the privilege":

> Where legal advice of any kind is sought from a professional
> legal adviser in his capacity as such, the communications
> relevant to that purpose, made in confidence by the client, are
> at his instance permanently protected from disclosure by
> himself or by the legal adviser except the protection be
> waived.

*Id.* at 602 (quoting *Wonneman v. Stratford Securities Co.*, 23 F.R.D. 281, 285 (S.D.N.Y. 1959)).

### A. Emails in April and May 2007

On April 25, 2007, Mr. Fauchier sent an email to Terence Hobbs and Christine Johnson at OHD.[5] According to Mr. Fauchier's affidavit, Christine Johnson is a lawyer in OHD's legal department. The record is silent, however, regarding what position Terence Hobbs may hold. Copies of the email were directed to Scott Farquhar, Kevin Leonard, and Deric Powell. According to Mr. Fauchier's supplemental affidavit, Mr. Farquhar is a representative of TMP Directional Marketing, which is "the agency designated by Overhead Door Corporation" for use by its distributors to obtain Yellow Pages placements. According to the amended privilege log, Mr. Leonard is associated with OHD, although the record is silent regarding what role he plays in that corporation. The email identifies Mr. Powell as PSK's "owner."

In his email, Mr. Fauchier asserts that a "scam compan[y] has moved into our area" and was misusing the word "OVERHEAD" in its advertising. Mr. Fauchier advises Mr. Hobbs and Ms. Johnson that "I plan on working with our State's Attorney General

---

[5] PSK's amended privilege log has 16 entries. Most of the entries are email chains, some of which are identical except for one additional email. The Court's *in camera* review reflects 23 separate emails, in various combinations, making up the first 10 entries of the 16 entries on the amended privilege log. (It should be recalled that the Hicklins concede that the last 6 entries are privileged.) A list of the emails is attached to this Order as Addendum A.

and the Better Business Bureau." Mr. Fauchier concludes: "Would be interested and much appreciative of any help you have to offer on the subject."[6]

Later the same day, Mr. Farquhar responded to the email, acknowledging that it was "a growing problem" and stating that he "will discuss with corporate next week." In addition to the original recipients of the email, a copy of the reply was sent to Carolyn Arra. According to Mr. Fauchier's supplemental affidavit, Ms. Arra is also a representative from TMP Directional Marketing. Ms. Johnson responded to Mr. Farquhar's email, with copies to the other recipients, stating: "I will review our file because we may have some history with this group in a different market. I will let you know what we locate."

On May 8, 2007, Mr. Fauchier emailed Ms. Johnson and Mr. Farquhar again, with copies to the other recipients, asking if they had "any more information on the scammer service company." The email concludes: "Please forward your thoughts and position on this. We would like to have as much information as possible as we communicate with our state's attorney general." Ms. Johnson responded the same day, copying Mr. Powell, Mr. Leonard, and Mr. Hobbs, but not providing copies to Mr. Farquhar or Ms. Arra.

On May 10, 2007, Mr. Farquhar responded to Mr. Fauchier's email of May 8, 2007. Mr. Farquhar's response, together with the first four emails identified on Addendum A, constitute the email string which was previously provided to the Hicklins and attached to their response as Exhibit A. (Apparently, however, the Hicklins did not receive a copy of the fifth email, from Ms. Johnson to Mr. Fauchier, dated May 8, 2007.) Further email communication between PSK and OHD's in-house counsel did not occur for more than one year.

The party asserting the attorney-client privilege has the burden of showing the privilege is applicable. *Id.* at 609. Here, PSK bears the burden. The Court concludes

---

[6] A copy of the first email was previously provided to the Hicklins, and attached to their response to the instant motion as Exhibit A.

that the communications set forth above do not prove that an attorney-client relationship was established between PSK and Ms. Johnson. In his initial letter, Mr. Fauchier advises Ms. Johnson and others that he "plan[s] on working with" the Attorney General and the Better Business Bureau. Mr. Fauchier does not seek any legal advice, but simply indicates that he "[w]ould be interested and much appreciative of any help you have to offer on the subject." Similarly, Ms. Johnson offers no legal advice. In her initial response of April 25, 2007, Ms. Johnson indicates she will "review our file" for any "history with this group." The Court has reviewed *in camera* Ms. Johnson's second response, dated May 8, 2007. She opines regarding the legal issues involved and also "encourages" PSK to employ certain language in its advertising. Ms. Johnson offers PSK no advice, however, regarding its legal remedies, if any.

Furthermore, the Court concludes that even *if* an attorney-client relationship existed between PSK and Ms. Johnson, any privilege relating to her May 8, 2007 email was waived by copies being provided to Kevin Leonard and Terence Hobbs. Voluntary disclosure of attorney-client communications waives the privilege. *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). While PSK claims that it had an attorney-client relationship with Ms. Johnson, that attorney-client relationship would not extend to other employees at OHD. *WebXchange, Inc. v. Dell, Inc.*, 264 F.R.D. 123, 126 (D. Del. 2010) ("In the corporate context, 'the privilege is waived if the communications are disclosed to employees who did not need access to them.'") (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005)). PSK has failed to prove what role Mr. Hobbs played at OHD, or that his assistance was necessary for Ms. Johnson to provide legal assistance to PSK. Accordingly, even *if* an attorney-client relationship existed between PSK and Ms. Johnson, disclosure of a communication to others at OHD destroyed the privilege. *See In re Grand Jury Proceedings*, 2007 WL 1121303 (N.D. Iowa 2007) (Generally, a disclosure to a third party indicates that the communication between the attorney and client is not confidential or privileged.).

Accordingly, the Court concludes that the emails identified as Document 760 on the Amended Privilege Log (and as numbers 1-6 on Addendum A) are not protected by the attorney-client privilege.

### B. *Emails in August and September 2008*

On August 6, 2008, Mr. Fauchier renewed his email correspondence with Ms. Johnson. Mr. Fauchier states that "our lawyer now believes there is justification to take legal action on a local level," and advises Ms. Johnson that "it appears this is our only option." Copies of the email are directed to Mr. Farquhar, Ms. Arra, Mr. Powell, Beth Somplatsky-Martori and Michael Pugh. According to PSK's amended privilege log, Ms. Somplatsky-Martori is associated with OHD, while Mr. Pugh is associated with Bradley & Riley Law Firm.

Again, Mr. Fauchier does not seek legal advice from Ms. Johnson. In fact, in his email of August 6, 2008, Mr. Fauchier identifies "our lawyer" as Mr. Squires. As discussed above, even if an attorney-client relationship existed between PSK and Ms. Johnson, disclosure of the August 6, 2008 email to Mr. Farquhar, Ms. Arra, and Ms. Somplatsky-Martori destroyed any attorney-client privilege which may have otherwise attached.

The next email produced for *in camera* inspection is from Mr. Fauchier to Daniel Slaughter, another attorney at OHD. Apparently at Mr. Slaughter's request, on August 19, 2008, Mr. Fauchier provided information from two Cedar Rapids telephone directories. Additional requests and exchanges of information occurred on September 2 and 3, 2008. (These emails are identified as numbers 8 through 12 on Addendum A.) While Mr. Fauchier was providing information to Mr. Slaughter, it does not necessarily follow that an attorney-client relationship existed between PSK and Mr. Slaughter. In the designated emails, Mr. Fauchier does not seek legal advice, nor is any offered by Mr. Slaughter. Rather, it appears that the information was provided pursuant to the Distributor Agreement, which required PSK to advise OHD regarding its intention to

9

pursue litigation. *See* Distributor Agreement, ¶ III(d) at 3 (docket number 34-1 at 6). This view is supported by the email from Mr. Fauchier to Mr. Slaughter, dated September 9, 2008, which states: "Can you please give us *your* position by weeks end." (emphasis added).

Even *if* an attorney-client relationship existed between PSK and Mr. Slaughter, potentially making the emails identified as numbers 8 through 13 protected by the attorney-client privilege, it would appear that the privilege was waived for those documents when they were attached to an email from Mr. Slaughter to Mr. Fauchier on September 12, 2008. (Identified as email number 14 on Addendum A). That is, on September 12, 2008, Mr. Slaughter sent an email to Mr. Fauchier, completing an email chain which started with Mr. Fauchier's email of August 19, 2008. The September 12, 2008 email, and thus all of the prior emails, were copied to Terence Hobbs. By disclosing the email to an OHD employee other than Ms. Johnson or Mr. Slaughter, the attorney-client privilege, if any, was waived.

Accordingly, the documents identified as P-55 – P-59 and P-1 – P-16 on the amended privilege log (and as email numbers 7-14 on Addendum A) are not privileged and must be disclosed.

### C. *Emails Between Mr. Squires and Mr. Slaughter*

On October 14, 2008, PSK's attorney, Vernon P. Squires, exchanged emails with Daniel Slaughter regarding the proposed pleadings. Mr. Fauchier and Mr. Squires then exchanged emails regarding Mr. Slaughter's comments. (This email chain is identified on the amended privilege log as P-17 – P-20, and on Addendum A to the instant Order as email numbers 15 through 19.) The emails between Mr. Fauchier and Mr. Squires are clearly protected by the attorney-client privilege. There is no doubt that Mr. Fauchier was acting on behalf of PSK, and Mr. Squires was acting as counsel for PSK. The Court must determine whether the emails exchanged between Mr. Squires and Mr. Slaughter on that date are protected by the work product privilege.

In the landmark case of *Hickman v. Taylor*, 329 U.S. 495 (1947), the Court held that communications which fall outside the scope of the attorney-client privilege may nonetheless be protected by the work product doctrine. Work product may consist of "raw factual information," or it may include the attorney's "mental impressions, conclusions, opinions or legal theories." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinarily, a party may not discover documents prepared in anticipation of litigation by another party unless the documents are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). If the court orders discovery of those materials, however, it must protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories" of the opposing party. Rule 26(b)(3)(B). *PepsiCo, Inc. v. Baird, Kurtz & Dobsen, LLP*, 305 F.3d 813, 817 (8th Cir. 2002). "[O]pinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Baker*, 209 F.3d at 1054.

In the emails of October 14, 2008, counsel exchange their "mental impressions, conclusions, opinions, or legal theories." This disclosure by PSK was required by the distributor agreement. Nonetheless, the Court concludes that it is protected work product pursuant to Rule 26(b)(3). Therefore, email numbers 15 through 19 as identified on Addendum A, which constitute the email chain identified as P-17 – P-20 on the amended privilege log, are not subject to discovery.

On October 16, 2008, Mr. Squires and Mr. Slaughter exchanged two additional emails, identified as email numbers 20 and 21 on Addendum A. (Copies of the earlier October 14 emails between counsel were attached and make up the email chain identified as P-21 – P-27 on the amended privilege log.) Mr. Squires advises Mr. Slaughter of the

manner in which PSK intends to proceed. The Court concludes that the exchanges are in anticipation of litigation and are protected by the work product privilege.

Finally, Mr. Squires and Mr. Slaughter exchange emails on October 21 and October 23, 2008. (Identified as email numbers 22 and 23 on Addendum A, and as P-28 – P-32 on the amended privilege log.) Counsel exchanged information on the proposed complaint and the expected course of the litigation. The Court concludes that the work product privilege applies.

### D. Emails Between Mr. Squires and Mr. Fauchier

The remaining emails identified on the amended privilege log are exchanges between Mr. Fauchier and Mr. Squires. They are identified on the amended privilege log as P-33 through P-54. At the time of hearing, counsel for PSK acknowledged that he was not pressing for disclosure of the emails between PSK and its counsel, dated August 3, 2009 to December 31, 2009.

### E. Summary

In summary, the Court concludes that the email chains identified on the Amended Privilege Log as document number 760, P-55 – P-59, and P-1 – P-16 are not privileged and must be produced. That is, the Court concludes that the first seven entries on the amended privilege log (email numbers 1-14 on Addendum A to this Order) are not privileged and must be produced.

The Court further concludes that the next three entries on the Amended Privilege Log, identified as P-17 – P-32, constitute privileged work product and are not discoverable. That is, that portion of the subpoena which would otherwise require OHD to produce the emails identified as numbers 15-16 and 20-23 on Addendum A will be quashed. (Email numbers 17 – 19 are also privileged, but it is the Court's understanding that they are not in OHD's possession and, therefore, are not subject to the subpoena.)

The Hicklins concede that the final six items listed on the amended privilege log, identified as P-33 – P-54, are protected by the attorney-client privilege and not

discoverable. (Furthermore, they are not in OHD's possession and not subject to the subpoena.)

### V. ORDER

IT IS THEREFORE ORDERED that the motion to quash and/or for protective order (docket number 33) filed by the Plaintiff on May 14, 2010 is hereby **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this __22nd__ day of June, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

## ADDENDUM A

| EMAIL NUMBER | DATE | SENDER | RECIPIENT | CC |
|---|---|---|---|---|
| 1 | 4/25/2007 | Martin Fauchier | Christine Johnson<br>Terence Hobbs | Scott Farquhar<br>Kevin Leonard<br>Deric Powell |
| 2 | 4/25/2007 | Scott Farquhar | Martin Fauchier<br>Christine Johnson<br>Terence Hobbs | Kevin Leonard<br>Deric Powell<br>Carolyn Arra |
| 3 | 4/25/2007 | Christine Johnson | Scott Farquhar | Carolyn Arra<br>Deric Powell<br>Kevin Leonard<br>Martin Fauchier<br>Terence Hobbs |
| 4 | 5/8/2007 | Martin Fauchier | Christine Johnson<br>Scott Farquhar | Carolyn Arra<br>Deric Powell<br>Kevin Leonard<br>Terence Hobbs |
| 5 | 5/8/2007 | Christine Johnson | Martin Fauchier | Deric Powell<br>Kevin Leonard<br>Terence Hobbs |
| 6 | 5/10/2007 | Scott Farquhar | Martin Fauchier<br>Christine Johnson | Carolyn Arra<br>Deric Powell<br>Kevin Leonard<br>Terence Hobbs |
| 7 | 8/6/2008 | Martin Fauchier | Christine Johnson | Scott Farquhar<br>Carolyn Arra<br>Beth Somplatsky-Martori<br>Deric Powell<br>Michael Pugh |
| 8 | 8/19/2008 | Martin Fauchier | Dan Slaughter | Vernon Squires<br>Deric Powell |
| 9 | 9/2/2008 | Martin Fauchier | Dan Slaughter | Vernon Squires<br>Deric Powell |

| EMAIL NUMBER | DATE | SENDER | RECIPIENT | CC |
|---|---|---|---|---|
| 10 | 9/3/2008 | Dan Slaughter | Martin Fauchier | |
| 11 | 9/3/2008 | Martin Fauchier | Dan Slaughter | Vernon Squires<br>Deric Powell |
| 12 | 9/3/2008 | Dan Slaughter | Martin Fauchier | Vernon Squires<br>Deric Powell |
| 13 | 9/9/2008 | Martin Fauchier | Dan Slaughter | Vernon Squires<br>Deric Powell |
| 14 | 9/12/2008 | Dan Slaughter | Martin Fauchier | Vernon Squires<br>Deric Powell<br>Terence Hobbs |
| 15 | 10/14/2008 | Vernon Squires | Dan Slaughter | Martin Fauchier |
| 16 | 10/14/2008 | Dan Slaughter | Vernon Squires | Martin Fauchier |
| 17 | 10/14/2008 | Martin Fauchier | Vernon Squires | |
| 18 | 10/14/2008 | Vernon Squires | Martin Fauchier | |
| 19 | 10/14/2008 | Martin Fauchier | Vernon Squires | |
| 20 | 10/16/2008 | Vernon Squires | Dan Slaughter | Martin Fauchier |
| 21 | 10/16/2008 | Dan Slaughter | Vernon Squires | Dan Slaughter<br>Martin Fauchier |
| 22 | 10/21/2008 | Vernon Squires | Dan Slaughter | Martin Fauchier |
| 23 | 10/23/2008 | Dan Slaughter | Vernon Squires | Martin Fauchier |